SAMUELS, J.
Two questions are presented by the record before us:
1st. Whether the protest made by the notary is sufficient in itself, or when aided by the parol proof offered, to charge the plaintiff in error as endorser.
2d. Whether the notice of dishonor was duly forwarded to the endorser, so as to charge him.
A_s to the first: The protest sets forth the facts that the notary took the bill on which the suit is brought, to the counting-house of Ciagett the drawee, and speaking to a clerk, exhibited the bill and demanded acceptance thereof; whereunto he answered that the same could not be accepted; and that thereupon the notary protested the bill for nonacceptance. In the *argument here, the plaintiff’s counsel made but one objection to the sufficiency of the protest ; that is, that it does not state that the clerk of the drawee had authority to refuse acceptance. This objection should not prevail, if the protest had no extrinsic support: The most formal words could not more fully express the notary’s opinion of the clerk’s authority in the premises, than is set forth in the protest. The notary at the counting-house of the drawee, exhibited the bill to a dark, demanded acceptance, which was refused, the answer to the demand noted, and thereupon the bill protested. This means that in the judgment of the notary it was proper to exhibit the bill to this clerk, and demand acceptance from him; that the clerk had authorityto act on that demand; that his answer was a proper refusal: And upon all this the notary made his protest, which plainly enough expresses his opinion in regard to the sufficiency' of every step on which he founded that official act.
The protest in this case is in the same form as that in Nelson v. Fotterall, 7 Leigh 179. In that case the whole court seems to have thought that parol proof was admissible to show the clerk’s authority to refuse acceptance; two of the judges thought it necessai^ in aid of the protest; two others thought it unnecessary, and that the protest of itself was sufficient: It was not intimated by any one, that if the protest did not sufficient^''verify the fact of the clerk’s authority, parol proof was inadmissible to supply the defect. The court is the proper tribunal to decide what facts are proved by written documents. If the court, as it might have done, had decided that the protest proved a proper demand, and the other facts set forth therein, it was unnecessary, and therefore improper, to hear parol proof in regard to it, unless proof had been previously offered to assail the truth of facts alleged therein. If this be error at all, it certainly is not to *the prejudice of the plaintiff in error here; it can do him no harm, after facts are proved by appropriate written testimony, the truth of which is in nowise impeached, to admit parol proof of the same fact.
Thus, whether we regard the protest as sufficient in itself, or as supported by the *123 parol proof fully showing the clerk’s authority and other facts, the court did not err to the prejudice of the plaintiff in error in permitting- tthe protest and evidence to go to the jury: The parol proof established the fact that the clerk had authority to refuse an acceptance.
As to the second : The law requires notice of dishouor of commercial paper to be transmitted to the parties thereto for the purpose of enabling them to do what is needful to protect their interests; to this end it may be important to have early notice, and the law requires it to be given, in the case before us the notice was sent in a mode which would bring it to the hands of the plaintiff in error at the earliest practicable day: Yet it is alleged that it should have been sent by another mode, which, although it might have commenced the transmission at an earlier day, yet would not have delivered it so soon as the mode adopted. If we could yield to the argument of the plaintiff’s counsel, we should sacrifice the object of the law. The notice was transmitted in the mail by an ocean steamer belonging to the Cunard line, which line carried the mail from Great Britain to the United Slates. It was sent by the first steamer which started after the bill was dishonored. This brings the case within the stringent rule of requiring that the notice be sent by the first mail. It appears, however, that there are regular lines of sailing packets from London (the place of the drawee’s residence) to the United States; that these packets carried letter bag's made up at the London post office; and that the times for their sailing from Great Britain occurred between the day *of the dishonor ox this bill and the day of the steamer’s leaving. It further appears, that although a sailing-packet should leave on the regular day for her departure, and thereafter a steamer should leave on her regular day of departure, the steamer would probably arrive first in the United States. It further appears, that the line of mail steamers is used by a very large majority of business men for the transmission of letters from Great .Britain to the United States. There can be no question, that of these two modes of transmission, the proper one was adopted. This one has in its favor the facts that it •carries the mail, that it is the ordinary mode of transmission, and that it may be expected to deliver a letter at an earlier day than the other; that other having in its favor the facts that it starts at an earlier day, and carries a letter bag. There is nothing to counterbalance the fact that the other line will deliver the letter at the earliest daju I think the notice of dishouor was duly transmitted.
I am of opinion to affirm the judgment.
The other judges concurred.
Judgment affirmed.